No. 19-3399

In the
# United States Court of Appeals
for the Seventh Circuit

———————————

DANIEL LEWIS LEE,
Petitioner-Appellee,

v.

T.J. WATSON, WARDEN,
Respondent-Appellant.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
District Court No. 2:19-CV-00468-JPH-DLP (Hanlon, J.) **(Capital Case)**

———————————

**EMERGENCY MOTION TO VACATE DISTRICT COURT'S
ORDER STAYING LEE'S EXECUTION**

———————————

JOSH J. MINKLER
United States Attorney
Southern District of Indiana

MICHAEL GORDON
Assistant United States Attorney
Eastern District of Arkansas

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW S. MINER
Deputy Assistant Attorney General

JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................... 2

STATEMENT ............................................................................................. 3

    I.     Procedural Overview ...................................................... 3

    II.    The Murders.................................................................... 6

    III.   Trial and Sentencing ...................................................... 7

    IV.   Postconviction Proceedings............................................ 8

    V.    The Present Habeas Petition and Stay........................... 9

APPLICABLE LEGAL STANDARD ..................................................... 11

ARGUMENT ........................................................................................... 12

    A.    Lee Cannot Succeed on the Merits ................................ 13

    B.    Lee Unnecessarily Delayed in Asserting His Claims......... 21

    C.    The Balance of Equities Weighs in Favor of Vacating the Stay .................................................................. 22

CONCLUSION......................................................................................... 24

CERTIFICATE OF SERVICE....................................................... 25

## INTRODUCTION

The government files this emergency motion to vacate the order entered by the district court on December 5, 2019, sua sponte staying petitioner Daniel Lewis Lee's execution. Because Lee's execution is scheduled for December 9, 2019, the government respectfully requests that the Court rule on this motion by the end of the day today, December 6, 2019, after which the Solicitor General intends to seek relief in the Supreme Court absent relief here.

Lee and co-defendant Chevie Kehoe committed three murders in 1996 in connection with their efforts to establish an independent nation of white supremacists in the Pacific Northwest. Lee was convicted of three counts of capital murder and sentenced to death by a jury in the United States District Court for the Eastern District of Arkansas. Lee's conviction and sentence have received extensive review by the district court in Arkansas and the Eighth Circuit on direct appeal and on collateral review. Now, 20 years after Lee's trial, the government is prepared to carry out Lee's lawful sentence.

The district court improperly entered a stay order in this habeas case, filed pursuant to 28 U.S.C. § 2241. The federal collateral review statute, 28 U.S.C. § 2255, provides that § 2255 is the exclusive vehicle for a federal prisoner to challenge his conviction or sentence on collateral review unless, pursuant to the statute's "saving clause," § 2255 is "inadequate or ineffective

2

to test the legality of his detention." 28 U.S.C. § 2255(e). The saving clause bars Lee's habeas petition because Lee cannot show that § 2255 is inadequate or ineffective to test the legality of his sentence, and as a result, Lee cannot demonstrate there is a likelihood his habeas petition will succeed on the merits. The district court erred in granting a stay on this basis alone, but moreover, the other equitable factors, including undue delay by Lee, also weigh against a stay. The district court's sua sponte stay order should be vacated.

## STATEMENT

### I.    Procedural Overview

This capital murder case has a long procedural history. In 1999, a jury in the Eastern District of Arkansas recommended that Lee receive the death penalty for the three murders he committed. In 2000, the Arkansas district court granted Lee's post-trial motion for a new sentencing hearing. *United States v. Lee*, 89 F. Supp. 2d 1017 (E.D. Ark. 2000). The Eighth Circuit reversed and reinstated the death sentence, *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001), *cert. denied, Lee v. United States*, 537 U.S. 1000 (2002). The Eighth Circuit then affirmed Lee's conviction and sentence on direct appeal, *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004), *cert. denied, Lee v. United States*, 545 U.S. 1141 (2005).

In June 2006, Lee filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, which the Arkansas district court denied, as well as a motion for reconsideration. *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315 (E.D. Ark. Aug. 28, 2008); *United States v. Lee*, No. 97-CR-243, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010). The Eighth Circuit affirmed. *United States v. Lee*, 715 F.3d 215 (8th Cir. 2013), *cert. denied*, *Lee v. United States*, 135 S. Ct. 72 (2014).

In September 2013, Lee filed a motion that he titled a motion for relief from judgment under Federal Rule of Civil Procedure 60. The Arkansas district court concluded that it lacked jurisdiction because the motion in substance amounted to a second or successive motion for relief under § 2255 and Lee had failed—as required by 28 U.S.C. § 2255(h)—to seek precertification from the court of appeals that the motion contained newly discovered evidence providing compelling proof of his innocence or a new rule of constitutional law made retroactive by the Supreme Court on collateral review. *United States v. Lee*, No. 97-CR-243, 2014 WL 1093197 (E.D. Ark. Mar. 18, 2014). The Eighth Circuit affirmed. *United States v. Lee*, 792 F.3d 1021 (8th Cir. 2015), *cert. denied*, *Lee v. United States*, 137 S. Ct. 1577 (2017).

In September 2018, Lee filed another motion for collateral relief under § 2255, and the Arkansas district court again denied the motion on the ground that it lacked jurisdiction over an uncertified second or successive

4

motion for relief under § 2255. Ark. Dkt. 1313.[1] The Eighth Circuit denied

Lee's application for a certificate of appealability. *Lee v. United States*, No.

19-2432 (8th Cir.) (order entered Nov. 4, 2019).

In the meantime, in July 2019, the United States scheduled Lee's

execution for December 9, 2019, and about two months later, Lee filed a

petition for a writ of habeas corpus in the United States District Court for the

Southern District of Indiana—the district within which Lee is confined—

under 28 U.S.C. § 2241. Dkt. 1 (filed Sept. 26, 2019). Lee asserted two

arguments that he raised in prior § 2255 motions. He claimed that he

received ineffective assistance of counsel at sentencing and that the

government committed *Brady*[2] and *Napue*[3] violations at sentencing. Dkt. 1,

at 6-30, 41-63.

Around the same time Lee filed his habeas petition, he joined a lawsuit

in the United States District Court for the District of Columbia challenging

the government's execution protocol, and on November 20, 2019, the district

court in that case enjoined Lee's execution. *In the Matter of the Federal*

---

[1] "Ark. Dkt." refers to district court docket entries in Lee's criminal case in the Eastern District of Arkansas. "Dkt." refers to district court docket entries in this case. "Tr." refers to the consecutively paginated transcript of Lee's trial in the Arkansas district court, the relevant portions of which the government filed in the district court. *See* Dkt. 14 (attachments).

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] *Napue v. Illinois*, 360 U.S. 264 (1959).

*Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C. Nov. 20, 2019) (preliminary injunction). Lee withdrew a stay application he had filed in this case in light of that injunction. Dkt. 22, at 1. The government subsequently filed an application in the Supreme Court to stay or vacate the injunction, and the application remains pending as of the filing of this motion. Stay Application, *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19A615 (Sup. Ct.) ("Supreme Court Stay Application") (filed Dec. 2, 2019).

Despite Lee's withdrawal of his stay motion, on December 5, 2019, the district court sua sponte entered a stay in this case. Dkt. 28, at 1. The court concluded that Lee had satisfied the standard for obtaining a stay of execution in habeas proceedings. Dkt. 27, at 6-25. The government now requests that this Court vacate that stay order.[4]

## II.    The Murders

Lee and Chevie Kehoe were members of a white supremacist organization known as the Aryan Peoples' Republic, or the Aryan Peoples' Resistance, which Kehoe founded for the purpose of establishing an

---

[4] Lee has also filed an application in the Eighth Circuit requesting permission to file a successive § 2255 motion raising a new claim based on newly discovered evidence. *Lee v. United States*, No. 19-3576 (8th Cir.) (application filed Dec. 4, 2019). The government has been ordered to respond by noon on December 7, 2019.

independent nation of white supremacists in the Pacific Northwest. *Lee*, 374 F.3d at 641. In January 1996, expecting to find valuable property, Kehoe and Lee traveled from Washington to the Arkansas home of William Mueller, a gun dealer who owned a large collection of weapons and ammunition. *Id.* When Mueller arrived home with his wife Nancy and their eight-year-old daughter Sarah Powell, Lee and Kehoe overpowered and incapacitated the Muellers and then questioned Sarah Powell about the location of cash, guns, and ammunition. *Id.* at 641-42. After taking weapons worth about $30,000 and $50,000 in cash and coins, Lee and Kehoe shot the three victims with a stun gun, placed plastic trash bags over their heads, and sealed the bags with duct tape to asphyxiate them. *Lee*, 2008 WL 4079315, at \*4 & n.52. Kehoe and Lee taped rocks to the three victims and threw them into the nearby Illinois Bayou. *Lee*, 374 F.3d at 641-42; *United States v. Kehoe*, 310 F.3d 579, 590 (8th Cir. 2002), *cert. denied*, 538 U.S. 1048 (2003).

## III. Trial and Sentencing

Following a two-month trial, Lee and Kehoe were convicted of conducting the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c); conspiring to conduct the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d); and three capital counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). The government provided notice of its

7

intent to seek the death penalty against both defendants for the three murders. *Lee*, 374 F.3d at 642.

The Federal Death Penalty Act, 18 U.S.C. §§ 3591-3593, required the jury to determine whether aggravating factors proved by the government sufficiently outweighed any mitigating factors proved by the defendants to justify the death penalty. The government's emphasis at Lee's sentencing hearing was the aggravating factor of his future dangerousness. *See* Tr. 7379-84. As relevant here, the government introduced evidence showing that in 1990 Lee severely beat an individual named Joey Wavra, forced Wavra down a manhole into a storm sewer, and retrieved a knife for his cousin, who repeatedly stabbed Wavra and slit his throat. Tr. 7394-96, 7401-07, 7412-15, 7441-46. Lee was initially charged with first degree murder but pleaded guilty to robbery and received a suspended sentence. Tr. 7470; *see* 5/10/1999 Vol. 43C Tr. 17-19. After weighing the aggravating and mitigating factors, the jury unanimously decided to impose a sentence of death. Tr. 8019-22.[5]

## IV.    Postconviction Proceedings

As summarized above, after Lee's conviction and sentencing, he obtained extensive post-conviction review in both the Arkansas district court and the Eighth Circuit. He challenged his conviction and sentence in a post-

---

[5] The same jury decided against death and in favor of life imprisonment for Kehoe.

trial motion for a new sentencing hearing, on direct appeal, and on collateral review under 28 U.S.C. § 2255.

As relevant here, in 2018, Lee filed a second or successive § 2255 motion claiming that newly discovered evidence showed that the government suppressed favorable evidence at his sentencing hearing, in violation of *Brady*, and also used false evidence to obtain the death penalty, in violation of *Napue*. Ark. Dkt. 1297, at 52-61. Lee argued that the government failed to turn over a document from the Oklahoma court case in which Lee was charged with murdering Joey Wavra but later pleaded guilty to robbery. *Id.* at 6, 22. The district court denied the motion, concluding that Lee was required to obtain precertification from the court of appeals under 28 U.S.C. § 2255(h). Ark. Dkt. 1313, at 14-17. The Eighth Circuit denied a certificate of appealability. *Lee v. United States*, No. 19-2432 (8th Cir.) (order entered Nov. 4, 2019). Lee has not sought precertification from the court of appeals under 18 U.S.C. § 2255(h) to pursue that claim in a second or successive § 2255 motion.

## V.     The Present Habeas Petition and Stay

Lee's present habeas petition asserts two claims that he raised in prior § 2255 motions in the Eastern District of Arkansas. As relevant here, Lee

9

reasserts the *Brady* and *Napue* violations based on the alleged newly discovered evidence about the Oklahoma court case. Dkt. 1, at 41-59.[6]

Lee initially filed a motion to stay his execution in connection with his habeas petition but withdrew the motion after a district court in the District of Columbia enjoined his execution for different reasons. *See* Dkt. 17 (stay motion); Dkt. 22 (withdrawal). The district court nonetheless issued a stay. Dkt. 27 (opinion); Dkt. 28 (order).

The court concluded that, notwithstanding the need for additional factual development, Lee had shown a "significant possibility" that the saving clause permitted his habeas petition, Dkt. 27, at 11, and he had shown "substantial grounds for his *Brady* and *Napue* claims," and "[t]his is sufficient for the immediate remedy he seeks, a stay of execution," *id.* at 20. The court concluded that "the additional delay caused by a stay in Mr. Lee's execution will only minimally harm the United States" because the "United States has significantly contributed to delays in scheduling Mr. Lee's execution and resolving Mr. Lee's legal challenges," and "[s]uch minimal harm is substantially outweighed by the harm" to Lee if he were executed in violation of his constitutional rights. *Id.* at 21-22. The court determined that the

---

[6] Lee also reasserted a claim of ineffective assistance of counsel, but the district court concluded that it did not have to reach that issue and did not address it. *See* Dkt. 27, at 2 n.1.

10

public's interest in enforcing Lee's sentence "is significantly diminished in this case" because Lee has asserted "substantial grounds" for attacking his death sentence, and the court noted that "several family members of the victims, the lead prosecutor, and the District Judge who presided over the trial all oppose Mr. Lee being executed." *Id.* at 23. And although the court recognized that "it is certainly feasible that Mr. Lee could have raised his *Brady* and *Napue* claims earlier than he did," it took the view that Lee had "not unnecessarily delayed in bringing his *Brady* and *Napue* claims such that a stay is unwarranted." *Id.* at 23-25.

## APPLICABLE LEGAL STANDARD

A stay of execution is a form of equitable relief in which the standards for a preliminary injunction generally apply. *See Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (per curiam). A capital prisoner seeking a stay of execution pending additional legal proceedings bears the burden of demonstrating (1) he will suffer irreparable harm if a stay is not granted; (2) he has a significant likelihood of success on the merits in the pending legal proceedings; and (3) the balance of equities (the harms to the prisoner and the government, as well as the interests of the public at large) weigh in favor of a stay. *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (per curiam); *cf. United States v. Holland*, 1 F.3d 454, 456 (7th Cir. 1993).

11

This Court has developed guidelines to apply the relevant equitable rules in the context of an application for a stay of execution in a capital case. "[T]he issue of irreparable injury is taken as established in a capital case." *Chrans*, 50 F.3d at 1360. On the other hand, in balancing the equities, a court must recognize the government's "strong interest in proceeding with its judgment," and it must consider "the extent to which the inmate has delayed unnecessarily in bringing the claim." *Lambert*, 498 F.3d at 452 (quoting *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004)). Because the government has a "significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id.* (quoting *Nelson*, 541 U.S. at 650). Accordingly, the Seventh Circuit has identified "two critical factors in evaluating whether a stay of execution should issue": (1) "whether the inmate shows a significant probability of success on the merits," and (2) "whether the inmate has delayed unnecessarily in bringing the claim." *Id.* at 451.

## ARGUMENT

The district court erroneously entered a stay. The two factors this Court has identified as "critical" weigh heavily against a stay in this case: Lee cannot demonstrate a likelihood of success on the merits, let alone a strong likelihood—indeed, the district court itself did not meaningfully

12

conclude he had made such a showing. And Lee delayed unnecessarily in asserting his *Napue* and *Brady* claims. Lee's inability to show he can succeed on the merits warrants vacating the district court's stay order, and vacatur is all the more warranted when his unnecessary delay is taken into account. In any event, apart from irreparable injury, the remaining equitable factors also weigh against a stay.

## A.    Lee Cannot Succeed on the Merits

As an initial matter, the district court misapplied the significant-probability-of-success standard. The court determined that "further factual development" was necessary to determine whether the saving clause permits Lee's habeas petition and whether there is merit to his *Brady* and *Napue* claims. *See, e.g.*, Dkt. 27, at 2. The court suggested that Lee "may be able to show" that his claims have merit with additional fact development. *Id.* at 17. And the court stated that "[w]hether Mr. Lee can ultimately prevail" if additional fact development supports his claims "is a question for another day." *Id.* at 13. All of these formulations—and others in the district court's opinion—are inconsistent with the requirement that Lee show "*a significant probability* of success on the merits." *Lambert*, 498 F.3d at 451 (emphasis added). If the court needs substantial fact development to evaluate Lee's claims, and there is a mere possibility that additional facts will support Lee's

claims, then Lee necessarily has not shown a significant probability of success, foreclosing a stay.

The Supreme Court has vacated lower court injunctions in capital cases based on the lower court's failure to make the requisite finding of probable success on the merits. *See, e.g., Dunn v. McNabb*, 138 S. Ct. 369, 369 (2017); *see also Supreme Court Stay Application* at 37 (citing cases). This Court should do the same here.

Regardless, Lee cannot show he is entitled to a stay of his execution. No amount of fact development can establish that Lee's habeas petition has merit.

1.     28 U.S.C. § 2255 provides the exclusive vehicle for federal prisoners to challenge their conviction or sentence on collateral review unless § 2255 is "inadequate or ineffective to test the legality of [their] detention." 28 U.S.C. § 2255(e). This Court has concluded that § 2255 is inadequate or ineffective in only limited circumstances, none of which is present here.[7] Instead, Lee is attempting to substitute his habeas petition here for an application to file a successive § 2255 motion in the Eighth Circuit. The

---

[7] As stated in the district court, Dkt. 14, at 27 n.4, the government disagrees with this Court's governing interpretation of the saving clause and preserves this issue for further review if warranted.

saving clause of § 2255 does not permit such substitution, and § 2255 therefore requires the denial of Lee's habeas petition.

Broadly speaking, this Court has determined that § 2255 may be inadequate or ineffective when a federal prisoner relies on an intervening judicial decision unavailable at the time of the prisoner's first § 2255 motion that demonstrates fundamental error in the prisoner's conviction or sentence and that cannot provide the basis for a second or successive § 2255 motion because of the gatekeeping provisions of § 2255(h). *See In re Davenport*, 147 F.3d 605 (7th Cir. 1998) (intervening decision of statutory interpretation establishing that defendant was convicted of conduct no longer deemed criminal); *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001) (decision by an international tribunal). Those circumstances are not present here. Lee does not—and cannot—claim that § 2255 was inadequate or ineffective to raise his *Brady* and *Napue* claims because of any intervening judicial decision.

This Court has recognized only one additional set of narrow circumstances in which § 2255 is inadequate or ineffective, in *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) (en banc). In that case, Webster was convicted of a capital offense and sentenced to death after the district court found, based on evidence presented at the sentencing hearing, that Webster was not "mentally retarded" and therefore was not exempt from eligibility for the death penalty under 18 U.S.C. § 3596(c). *Id.* at 1124-25, 1130-31. While

15

Webster's § 2255 motion was pending, the Supreme Court decided *Atkins v. Virginia*, 536 U.S. 304 (2002), which "held that the Eighth Amendment—not just a statute—prohibits the execution of the intellectually disabled." *Webster*, 784 F.3d at 1132. After the denial of the *Atkins* claim in Webster's § 2255 motion, he obtained new evidence in support of his intellectual-disability claim that existed at the time of his trial but had been unavailable to him. *Id.* at 1132-34. Because Webster did not rely on new evidence of innocence or a new rule of constitutional law and therefore could not satisfy AEDPA's gatekeeping requirements for second or successive § 2255 motions, *see* 28 U.S.C. § 2255(h), he filed a § 2241 habeas petition raising an *Atkins* claim on the basis of that new evidence. *Id.* at 1134-35.

This Court determined that in these circumstances there was a "structural problem" or "lacuna" in § 2255 and therefore the saving clause permitted Webster's habeas petition. 784 F.3d at 1135-44. The Court determined that a prisoner claiming that the Constitution makes him "categorically ineligible for the death penalty, based on newly discovered evidence, may not be barred from doing so by section 2255." *Id.* at 1140. "[T]he fact that the Supreme Court had not yet decided *Atkins* and *Roper* at the time AEDPA was passed supports the conclusion that the narrow set of cases presenting issues of constitutional ineligibility for execution is another lacuna in the statute." *Id.* at 1138. The Court emphasized that "this rule

16

cannot apply to all newly discovered evidence, or else there would never be any finality to capital cases involving either the intellectually disabled or minors." *Id.* at 1140. The court concluded that the rule applied to newly discovered evidence that "existed before the time of the trial" and was unavailable "despite diligence on the part of the defense," not because of "missteps by" the defense. *Id.* (emphasis omitted); *see id.* at 1141 (defendant must present "previously existing evidence . . . that counsel did not uncover despite diligent efforts"). The court anticipated that it will be a "rare case" in which these conditions are satisfied. *Id.* at 1140.

Thus, under *Webster*, the saving clause permits a habeas petition only when the defendant asserts that he is constitutionally ineligible for the death penalty, *e.g.*, because of intellectual disability, and only when the defendant relies on newly discovered evidence that existed at the time of his trial but was unavailable to him despite his diligence. Neither of those circumstances is present here.

First, Lee does not contend that the new evidence "show[s] that he is categorically ineligible for the death penalty" under the Constitution. *Webster*, 784 F.3d at 1140. He does not claim that the Eighth Amendment categorically prohibits his execution because he was intellectually disabled or for any other reason. *See id.* at 1140-41. Rather, Lee claims that the government failed to turn over evidence and presented false evidence that

17

affected the jury's evaluation of aggravating and mitigating factors. *Webster* does not permit Lee to raise these claims.

In *Webster*, the Court concluded that because the Supreme Court had not decided that the Eighth Amendment barred execution of minors or the intellectually disabled at the time that Congress enacted restrictions on second or successive § 2255 motions, *see* 28 U.S.C. § 2255(h), there is reason to construe the saving clause to permit habeas petitions raising those claims based on newly discovered evidence, *see Webster*, 784 F.3d at 1139. *Brady* and *Napue*, however, are longstanding decisions, and defendants have long raised *Brady* and *Napue* claims on the basis of newly discovered evidence. If Congress had meant to allow defendants to raise such claims in second or successive § 2255 motions, it could have expressly provided as much in AEDPA. Instead, AEDPA permits second or successive motions based on newly discovered evidence, but only if that evidence, if credited, would establish the defendant's innocence by "clear and convincing evidence." 28 U.S.C. § 2255(h)(1). Thus, defendants may raise *Brady* and *Napue* claims based on newly discovered evidence in second or successive § 2255 motions, but only if they present compelling evidence of their innocence. *See United States v. Buenrostro*, 638 F.3d 720, 725-26 (9th Cir. 2011) (per curiam). Allowing the *Brady* and *Napue* claims that Lee asserts in this case to proceed

18

under the saving clause would effectively void these congressionally mandated limitations.

Second, the evidence that Lee alleges is newly discovered—evidence about what transpired at a court hearing in Oklahoma state court, as reflected in a fee application filed in that court—was available to Lee before his trial, and to the extent Lee did not obtain the evidence at that time, it was because of "missteps" or lack of "diligence" by the defense. *Webster*, 784 F.3d at 1140. Lee himself was present at the hearing and therefore would have known what transpired, and the fee application on which Lee now relies is a court document readily available to the public. *See* Dkt. 14, at 36, 66-67. Lee could have obtained the document by requesting the public court file. In fact, in a November 14, 2014, letter to the Attorney General seeking resolution of Lee's case "short of execution," Lee's lawyers acknowledged that this "information relating to the Wavra incident was available to, yet never pursued by, Mr. Lee's trial . . . counsel." *Id.* (quoting Letter from Ruth E. Friedman to Attorney General Eric Holder (Nov. 4, 2014) (on file with government)). Section 2255 was not inadequate or ineffective merely because Lee failed to act with diligence to obtain publicly available information that he now alleges would support *Brady* and *Napue* claims.

In short, Lee identifies no structural problem in § 2255 that rendered § 2255 inadequate and ineffective in this case and therefore the saving clause

19

prohibits his habeas petition. On the basis of this statutory bar alone, Lee has not shown a likelihood of success that would justify a stay of his execution. As Lee himself has acknowledged, a likelihood of success is a prerequisite to a stay of his execution. *See* Response to Stay Application at 15, *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19A615 (Sup. Ct.) (filed Dec. 4, 2019). He has not shown that here.

2.      Even assuming Lee could get past the saving clause of § 2255, he still does now show a substantial likelihood of success on the merits of his *Brady* and *Napue* claims. The alleged newly discovered evidence about the Oklahoma court hearing is not *Brady* material, because Lee was at the hearing and therefore knew what took place there, *see, e.g.*, *United States v. Wilson*, 787 F.2d 375, 389 (8th Cir. 1986) ("The government is under no obligation to disclose to the defendant that which he already knows."), and also because, as discussed above, the court document that Lee uses to recreate the events at the hearing (a fee application from Lee's lawyer) is publicly available, *see United States v. Shields*, 789 F.3d 733, 746-47 (7th Cir. 2015) (court records that the defense could have accessed through due diligence are not *Brady* material).

Moreover, the evidence about the Oklahoma court hearing— which, according to Lee, shows that he pleaded guilty to robbery because a judge found no probable cause for a first-degree murder charge, not because he

20

received a favorable plea deal from prosecutors—is not material. The government used the facts of the Wavra case to show that Lee avoided a lengthy prison sentence and had an opportunity to reform and avoid future trouble but instead continued to act violently and commit additional crimes, culminating in the murders in this case. The substance of this argument remains unchanged whether Lee pleaded guilty to robbery because of judicial findings or because of a favorable plea deal from prosecutors.

Thus, in addition to the procedural bar of the saving clause, no amount of fact development could substantiate Lee's *Brady* and *Napue* claims. Lee cannot show a substantial likelihood of success on the merits.

## B.    Lee Unnecessarily Delayed in Asserting His Claims

Lee also delayed unnecessarily in bringing the *Brady* and *Napue* claims he now asserts in his habeas petition. He had ample opportunity to assert those claims earlier but failed to do so.

By his own account, Lee knew all of the facts he needed to raise the *Brady* and *Napue* claims no later than than November 4, 2014. *See* Dkt. 14, at 66 (citing Letter from Ruth E. Friedman to Attorney General Eric Holder (Nov. 4, 2014) (on file with government)). Yet Lee did not raise those claims in any court until about four years later, on September 10, 2018, when he filed a § 2255 motion raising the claims in the Eastern District of Arkansas, and Lee did not raise the claims in a habeas petition until September 2019.

21

Thus, although the district court concluded that Lee "has been diligently pursuing his claims," Dkt. 27, at 24, the facts demonstrate otherwise. Lee provides no explanation for why he unnecessarily waited almost four years to first raise those claims, and the district court does not identify any in its stay order.

### C.    The Balance of Equities Weighs in Favor of Vacating the Stay

The balance of equities also tip in favor of vacating the district court's stay order. Although the district court asserted that a stay of Lee's execution "will only minimally harm the United States," Dkt. 27, at 22, the Supreme Court has rejected that view, emphasizing that "[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence," *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)); *see Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (explaining that "finality acquires an added moral dimension" once post-conviction proceedings are complete, and that "[o]nly with an assurance of real finality can the [government] execute its moral judgment in a case . . . [and] the victims of crime move forward knowing the moral judgment will be carried out"). Indeed, the Supreme Court has recognized that unduly delaying executions can frustrate the death

penalty, and undermine its retributive and deterrent functions. *See Bucklew*, 139 S. Ct. at 1134.

The district court suggested that the public interest in execution of Lee's sentence is undermined because of the length of time the government took to revise its protocol and litigate Lee's numerous challenges to his conviction and sentence. Dkt. 27, at 21-22. But the government should not be faulted for undertaking its grave responsibility to select a mechanism for implementing the ultimate punishment in a conscientious manner, including by reviewing States' experiences, soliciting and considering the opinions of medical experts, and ultimately selecting the protocol most likely to result in a humane execution. *See Supreme Court Stay Application* at 10-13. Nor should the government be faulted for taking time to respond to Lee's repeated filings with care and diligence. After years spent locating a reliable drug source and developing an effective federal protocol—and long after Lee has exhausted his many available challenges to his conviction and sentence on direct appeal and collateral review under § 2255—the government has a powerful and well-recognized interest in proceeding with the administration of justice as planned. *See, e.g.*, *Bucklew*, 139 S. Ct. at 1133-34; *Hill*, 547 U.S. at 584.

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's stay order barring Lee's execution.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney
Southern District of Indiana

MICHAEL GORDON
Assistant United States Attorney
Eastern District of Arkansas

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW S. MINER
Deputy Assistant Attorney General

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

December 6, 2019

24

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the Seventh Circuit using the CM/ECF system on December 6, 2019. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766